IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

- - - - - - - - - - - - - - - - - -
                                    )
  UNITED STATES OF AMERICA,         )
                                    )
  v.                                )      CRIMINAL ACTION NO.
                                    )      2:25cr105
                                    )
  RODNEY THORNTON,                  )
                                    )
          Defendant.                )
- - - - - - - - - - - - - - - - - -


TRANSCRIPT OF PROCEEDINGS

(Detention hearing and arraignment)

Norfolk, Virginia

September 5, 2025


BEFORE:
          THE HONORABLE ROBERT J. KRASK
          United States District Judge


APPEARANCES:


          UNITED STATES ATTORNEY'S OFFICE
          By:  Jeremy McKinnon
               Assistant United States Attorney
               Counsel for the United States


          FEDERAL PUBLIC DEFENDER'S OFFICE
          By:  Virginia Bare
               Assistant Federal Public Defender
               Counsel for the Defendant

1          (Hearing commenced at 2:43 p.m.)

2          THE CLERK:  United States of America versus Rodney

3    Thornton, case 2:25cr105.

4          Is the government ready to proceed?

5          MR. McKINNON:  The government is ready to proceed.

6          THE CLERK:  Is defense ready to proceed?

7          MS. BARE:  Defense is ready.

8          And Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.  This matter is

10   scheduled for first a detention hearing.  Are we ready to go

11   forward with that?

12         MS. BARE:  We are, Your Honor.

13         THE COURT:  Very good.  Then we will start with

14   evidence or proffer from the United States.  Then we will

15   hear from the defense.

16         MR. McKINNON:  Only by proffer, Your Honor?

17         THE COURT:  We will save the argument for later.

18   We will just start with the proffers and evidence first.

19         MR. McKINNON:  Yes, Your Honor.

20         THE COURT:  Thank you.

21         MR. McKINNON:  Your Honor, the defendant is a

22   34-time convicted felon, which includes convictions of

23   possession with intent to distribute, I.D. theft, forgery,

24   check fraud, bank fraud, and continual violations of his

25   probation.

1          His first felony conviction was in 2012, thereafter

2     being placed on unsupervised probation with the beginning of

3     his probation violations starting in 2014.  Since, he's been

4     charged with violations of probation, violations of

5     conditions of pretrial release, as recently as 2024, and

6     since 2017 has been nolle prossed on 38 felony charges,

7     including forgery, I.D. theft, larceny, obtaining money by

8     false pretenses, and false statements.

9          He was also charged with a failure to appear in

10    2023 and remains on probation to this day.  He's currently

11    pending outstanding charges with the State of Virginia, and

12    he was recently nolle prossed on separate charges and

13    brought into the custody of the U.S. Marshals as of

14    September 2nd.

15         He has no record of employment with the state

16    during the time of the alleged conspiracy, beginning in

17    October 2023.  He was -- apologies.  In February of 2024, as

18    a felon and on probation, is he was the driver of a vehicle

19    which contained a concealed firearm in the center console,

20    in which another party claimed that that firearm was his

21    property.

22         THE COURT:  When was that?  Is that reflected in

23    the bond report?

24         MR. McKINNON:  That is February 2024, Your Honor.

25    I believe it is reflected as February 25th, 2024.

1          THE COURT:  Okay.  That's the alleged assault and

2  possession of firearm by a felon charge?  They were

3  dismissed?

4          MR. McKINNON:  Yes, Your Honor.

5          THE COURT:  That's what you're referring to?

6          MR. McKINNON:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. McKINNON:  Also with information provided to

9  the government, he has traversed the East Coast to

10  Jacksonville, Florida, executing the fraudulent schemes

11  alleged within the offense conduct here and is known to

12  obtain lodging under third-party and false identities.

13          As well, the conspirators are known to obtain

14  rental properties and vehicles through the use of fictitious

15  pay stubs, fictitious Social Security numbers, known as

16  CPNs, which are consumer privacy numbers, and using the

17  financial accounts of other parties, including the victims

18  of the schemes.

19          When the defendant was most recently arrested, a

20  search warrant was executed on his phone.

21          THE COURT:  Help me out with dates, just to give me

22  a frame of reference.

23          MR. McKINNON:  Your Honor, that should have been

24  August of 2024, approximately.

25          THE COURT:  That's when he was arrested?

1          MR. McKINNON:  Yes, Your Honor.

2          THE COURT:  The phone was seized and searched?

3          MR. McKINNON:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MR. McKINNON:  And within the phone was found

6    pictures of the defendant holding a handgun, pointing the

7    handgun at the person of a sleeping female.  As well, found

8    were screen shots of the personally identifiable information

9    of other parties and their banking information similar to

10   the alleged offense conduct here.

11         No further proffer, Your Honor.

12         THE COURT:  Thank you.

13         Ms. Bare, happy to hear from you.

14         MS. BARE:  Yes, Your Honor.  I have a brief proffer

15   before we get to argument.  Mr. Thornton has been at Newport

16   News jail since August 27th of 2024, which is reflected in

17   the bond report.  During that time, he has been working

18   doing laundry for about ten months.  Working at the Newport

19   News city jail is a privilege.  It requires that the person

20   be infraction free.

21         Mr. Thornton's proposed third-party custodian, his

22   mother, Kenda Thornton, is here in the courtroom today.  As

23   the bond report notes, she has no criminal history at all,

24   has lived in the same house for over 20 years, and has

25   steady daytime employment.  He also has a 4-month-old baby

1  that he has never been able to hold, who is here in the

2  courtroom today.

3         I have a list of the family members who are here in

4  support.  I can proffer their names now or just leave that

5  to argument, whichever the Court proposes.

6         THE COURT:  Now is fine.  Thank you.

7         MS. BARE:  So, Your Honor, Ms. Kenda Thornton is

8  here, his mother; Reola Thornton, his grandmother; his

9  sister, Ashley Thornton, and these are all adults.  I will

10 note the minors with their initials:  his son, Dashon Jones;

11 his daughter, DJ; his son, JL; his son, AT; his aunt, Ramona

12 Smalls; and his girlfriend, Destiny Woods, and I will talk

13 about the family support during argument.

14        THE COURT:  Sure.

15        MS. BARE:  Thank you, Your Honor.

16        THE COURT:  Thank you.

17        All right.  Happy to hear any argument related to

18 the Bail Reform Act factors.

19        MR. McKINNON:  Yes, Your Honor.  As reflected in

20 the bond report, and we see it directly before the

21 defendant's arrest in August 2024, he was on probation.

22 With the lengthy list of prior violations and convictions,

23 he's shown no ability to actually uphold himself to the

24 standards of release.  The weight of the evidence goes

25 against the defendant being able to present himself under

1   any combination of conditions that will reasonably assure

2   the safety of any other person or the community.

3          As well, with the alleged offense conduct,

4   including such schemes as the use of intimidation or the use

5   of firearms in the execution of these schemes and artifices,

6   it's further shown by the defendant's previous activity,

7   while he was released in February 2024, that he does

8   constructively possess firearms near his person or the

9   capacity of the vehicles that he's within.

10          The weight of the evidence against the defendant is

11  strong.  As well, there is a lack of stable employment.  The

12  state records show, since October 2023, the defendant hasn't

13  had employment in comparison with what's stated within the

14  bond report, which is self-reported by the defendant.

15          He has lack of any financial stability as well, and

16  is known for using aliases and false documents, including

17  false identities and even the PII of possible victims as

18  found in his phone from February 2024.  With his prior

19  criminal history and prior violations, the government moves

20  this Court to detain.  Thank you, Your Honor.

21          THE COURT:  Thank you.

22          Ms. Bare.

23          MS. BARE:  Your Honor, Mr. Thornton is, first of

24  all, absolutely not a flight risk.  The Court can be assured

25  of his appearance for a lot of reasons.  His local ties are

1 very strong.  He was born and raised in Norfolk.  He spent

2 his life here, and his family ties are extraordinary.  They

3 fill up a row of this courtroom.  Those family ties are

4 important to him personally.  They provide a level of

5 accountability to him that, for many people, that it's

6 stronger than even the Court.  And I'm not saying that in

7 any negative way about the Court, but the love that a person

8 has for their family is important, not wanting to let them

9 down.

10    Mr. Thornton has appeared in court consistently.

11 There is one charged failure to appear which was dismissed

12 relatively quickly, and it does not appear to be part of a

13 criminal case.

14    THE COURT:  Where is that?

15    MS. BARE:  It's August 8th, 2023, dismissed

16 September 26, 2023.

17    THE COURT:  All right.

18    MS. BARE:  I wasn't able to confirm this with the

19 government.  I checked the Virginia court system.  I didn't

20 see it listed as part of -- it does not show up on the

21 criminal cases, so it is not part of a criminal case, but it

22 was charged.  It was dismissed in under a month.

23    Mr. Thornton may not have been perfect with

24 probation, but he has absolutely attended court.  He has a

25 very good release plan.  His mother is willing to be a

1    third-party custodian.  She is here in court today.  She

2    will understand whatever -- she will listen to any

3    instructions the Court gives her.  She has no criminal

4    history at all, nothing.  She also has lived in the same

5    place for over 20 years and has steady 8 to 5, something

6    like that, employment, daytime employment.  She understands

7    and agrees to the conditions of being a third-party

8    custodian.

9         Mr. Thornton's initial appearance was only

10   Wednesday.  In the last two days, probation was able to

11   easily get in touch with her, get a bond report by yesterday

12   morning.  She's been responsive, easy to get in touch with.

13   She is an excellent third-party custodian, and, of course,

14   we will discuss this regarding danger as well, but this is

15   not an all or nothing question whether someone should be

16   incarcerated or released.

17        Mr. Thornton is willing to agree to home

18   confinement.  He is willing -- he understands that a

19   third-party custodian has at least been considered by

20   probation.  The question is what conditions or combination

21   of conditions are necessary to reasonably assure his

22   appearance and safety of the community.

23        As far as his dangerousness, Mr. Thornton has been

24   incarcerated for just over a year now on this conduct.

25   Incarceration serves different purposes, and one of them is

deterrence.  Courts sentence people to incarceration so that
they are deterred from misconduct, among other factors.  He
has been deterred from misconduct.  He not only has had this
year leading up to now, but he's now facing federal charges.
The game here has absolutely changed for him, and he knows
that.  There is no greater incentive than knowing that you
are coming up on a court date.  I mean, I shouldn't say no
greater incentive, but it's a very strong incentive.  He is
facing federal charges, a federal trial, and he's had a year
away to step back and think about things.

        Mr. Thornton is -- we recognize that the Court is
not going to order personal recognizance.  An ankle monitor
does an awful lot.  First of all, it is an absolutely
constant reminder of the fact that you are under the Court's
watchful eye.  Many of them beep if you go too far into the
backyard.  You are constantly keeping it charged, you have
to make sure it's ready to go, and is a physical item on
your body that you see and are reminded that you cannot go
anywhere unless it's authorized by the Court.

        Additionally, it's a way of knowing exactly where
he is.  I've heard the argument from the government before
that people can cut ankle monitors off.  We recognize -- it
doesn't happy very often, right.  It's an absolute rarity,
but he has his family support.  He has the people that he
loves watching him.  The Court can know exactly where he is,

1    and he has a family that will keep their eyes on him as

2    well.

3    Taken together, these things are more than enough

4    to assure the Court that he is not going to be a danger to

5    the community in the time that he is facing his federal

6    trial.  Additionally, he's just not a flight risk.  He has

7    the one FTA, was settled in under a month and dismissed.  He

8    has made his court dates.  He has local ties.  He's not a

9    person who has any reason to leave.  In fact, he has

10   stronger reasons than ever as he has a very young child that

11   he has never been able to hold, and that it would be

12   extraordinarily meaningful for him to be able to have a

13   little bit of a life, and, of course, the best way to raise

14   children is to have close relationships with their parents.

15   So for those reasons we ask that the Court find

16   conditions that can reasonably assure his appearance and

17   safety to the community, and we believe that home

18   confinement and third-party custodian meet those

19   requirements.

20   Thank you, Your Honor.

21   THE COURT:  Thank you.  All right.  The Bail Reform

22   Act requires that I consider four sets of factors, starting

23   with the nature and seriousness of the offenses charged.

24   These are very serious offenses.  The Grand Jury heard

25   evidence relating to the alleged crimes charged.  It reports

in the indictment that the aggregate loss associated with the activity in question is at least $2 million.  It indicates there are over 500 victim reports having been made.  There has at least been a proffer today that this conduct extends beyond the Eastern District of Virginia and involves travel to other locations to commit the fraud that is alleged and described in the indictment.

So the crimes charged are very serious, and they involve victimizing people allegedly who bank at the credit union Naval Federal and involves getting loans on their accounts, transferring money from their accounts, and doing it in a way that is not simply, you know -- it's doing it in a way in which they are relating and having relationships with allegedly the people involved directly.

So they are contacting them, they are approaching them, the folks who are alleged to have been involved in this offense, and gaining access to their phones and to their accounts and then engaging in transactions apparently worth large amounts of money.

The weight of the evidence, it's kind of hard to know at this juncture how great it is and specifically what Mr. Thornton's role is in the actual day to day of this offense, which the indictment alleges took place over an extended period, 16 months, at least, from October 2023 through April 2025.  Obviously, he's been incarcerated for

1  some portion of that time frame.

2         But there is evidence to suggest that Mr. Thornton,

3  at least on his phone, had evidence relating to this crime,

4  including personal identity information of others, bank

5  account information of others, which is significant and ties

6  him to the offense.

7         Also, the Grand Jury has heard at least from one or

8  more witnesses about the offense and decided that there is

9  probable cause for the charges.  So those are the first two

10 factors.  I would say they don't weigh in the defendant's

11 favor.  Obviously, I can't make any determination about

12 ultimately guilt or innocence at this stage.  That is going

13 to have to await a trial.

14        With respect to the defendant's history and

15 characteristics, to his credit, he's got a lot of family

16 members here who are here to support him.  His mother is

17 offering to take him in.  She is certainly a suitable

18 third-party custodian.  The Court has no concerns about

19 Ms. Thornton in terms of taking in her son.

20        The question is, is her son a suitable person to be

21 in the custody of another, and the Court has grave concerns

22 about that based on the information contained in this

23 report, which shows that he has substance abuse issues.

24 It's hard to know how serious they are at the present time,

25 but he has a history of using marijuana, a history of using

heroin.  There was a positive test for opiates back in, I
think it was March 2015.  That's later than the date he said
he last used, but I don't know if those are current problems
or not, but there appears to be some longstanding history of
substance abuse.

He does not have, according to the government, a
verifiable record of recent employment.  He indicates he was
doing janitorial work up until his arrest in August of 2024,
but as I understand Mr. McKinnon's proffer, there is no
records with the state that would document that he was being
paid and received income from that source.  I don't know
what to make of that.

He does have strong family ties.  He's got children
here, he's got family local, and that's usually a good sign,
but the Court is concerned about his non-compliance and
extensive record of non-compliance with conditions of
release.  He has a probation violation following his
possession with intent to distribute heroin conviction back
in 2012.  He was found to have violated probation in 2015.
Then in 2018 -- and he was -- it was revoked and
re-suspended, but he was placed back on probation, and he
violated again in 2018.  And the nature of the violations
are concerning.  So he failed to complete a substance abuse
assessment.  He tested positive for marijuana on five
occasions.  The first go-round he failed to complete

1    substance abuse assessments twice, failed to report for both

2    appointments.  He tested positive for opiates and positive

3    for marijuana.  He failed to obtain stable and verifiable

4    employment.  He was arrested for new charges, all while he

5    was on supervision, failed to report for office visits on

6    two occasions.

7          Then we have his third term of supervised probation

8    which began on May 16, 2022.  So we are getting much closer

9    to the present time, and what do they report?  But they

10   report that he absconded from supervision.  So it isn't

11   necessary that I think he is going to flee to another state,

12   though certainly there is evidence to suggest that perhaps

13   the financial means were developed as a result of this crime

14   that would support that, and he has ability to impersonate

15   others, but he's not showing up to court and to a probation

16   office to be supervised.

17         So that is extremely concerning.  I note, while he

18   has the support of family, Page 6 of the report says that

19   after he failed to show, when his last visit to the

20   probation office was May 23rd, 2024, till he gets arrested

21   and is incarcerated, I guess in August of 2024, but it says

22   after that date, they made home visits and made telephone

23   calls.  They sent letters.  They reached out to third

24   parties to try and locate the defendant to get him to come

25   back into supervision, and those attempts were unsuccessful.

1    So what that is suggesting to me is that placing

2  him in the custody of a third-party custodian isn't going to

3  work because the defendant, when he does not want to be

4  found by a probation office, knows how to abscond himself

5  from that supervision, and he's done it on multiple

6  occasions in spite of the extra effort taken by that

7  probation office to locate him to get him to be supervised.

8  So that's extremely concerning.

9    Then we have his criminal history, which, you know,

10  it's rare that we have somebody with this many felony

11  convictions.  Obviously, a number of them are related to

12  forgery and uttering and the like, but, you know, what's

13  interesting about this history is it includes, as

14  Mr. McKinnon said it, it covers a wide span of different

15  types of criminal conduct, including driving offenses, drug

16  offenses, fraud offenses.  But after he gets arrested and

17  goes to court, the question is does he stop?  Does he change

18  his behavior?

19    He's arrested December 2017 charged on 19 counts of

20  fraud offenses.  He eventually pleads guilty.  In June 15,

21  2018, what happens next?  He's arrested June 30, 2019, in

22  Williamsburg with forgery and uttering.  He is found guilty

23  of at least one of those two counts.

24    Does he stop then with that kind of fraudulent

25  conduct?  Well, he's arrested in August with these multiple

1    offenses, fraud offenses, August of 2024 in Norfolk, and

2    those apparently form the basis for these federal charges.

3            So what I see is someone who so far is not amenable

4    to supervision, is not amenable to compliance with the law,

5    is not amenable to following court orders.  Hopefully, that

6    will change in the future, and maybe Ms. Bare is correct,

7    that he's learned his lesson after being locked up in the

8    past year, but I can't rely on words.  I have to look at his

9    actions, which are the best indicators of what he's going to

10   do in the future.

11           I do find that he does present a danger to the

12   community, both an economic danger and a danger associated

13   with the fact that is shown in his phone holding a handgun

14   and pointing it at someone else.  That is obviously very

15   dangerous conduct, and I find that he presents a risk of

16   flight by virtue of the identity information that was

17   amassed apparently as part of this scheme.

18           I do not find that there are any conditions that I

19   might set that would reasonably assure the safety of the

20   community and other persons or that would reasonably assure

21   that he will appear in court for trial, regardless of

22   whether he's going to flee the jurisdiction because of his

23   family ties here.  So I order Mr. Thornton detained for

24   those reasons.

25           Are we prepared to go forward with the arraignment?

1          MS. BARE:  We are, Your Honor.

2          THE COURT:  All right.  If you both will stand.

3          Ms. Bare, did you review the indictment and the

4   charges with Mr. Thornton, and did he appear to understand

5   them?

6          MS. BARE:  We have, and he does, Your Honor.

7          THE COURT:  Does he want to be present for pretrial

8   motions hearings in his case?

9          MS. BARE:  He does, Your Honor.

10         THE COURT:  Mr. Thornton, did you receive a copy of

11  this indictment?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did you review it with your attorney?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And you understand what you're charged

16  with?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  You are charged, as I told you the

19  other day, with committing six offenses in this indictment.

20  Count one charges that you unlawfully agreed with others to

21  commit wire and bank fraud as part of a scheme and artifice

22  to defraud other persons and Navy Federal Credit Union,

23  among others.  Counts five and 11 charge you with engaging

24  in substantive counts of wire fraud.  Counts 17 and 23

25  charge you with substantive counts of committing bank fraud

and trying to defraud federally insured financial

institutions. And count 25 charges that you unlawfully

agreed with others to launder the proceeds of unlawful

activity, money laundering.

So those are the charges. Is there any reason why

you would have problems understanding those charges or

understanding what I'm saying to you today, sir?

THE DEFENDANT: No.

THE COURT: And to those charges, how do you plead

today? Do you plead guilty or do you plead not guilty?

THE DEFENDANT: Not guilty.

THE COURT: You want to be tried on these charges

by the Court or by a jury?

THE DEFENDANT: Jury.

THE COURT: And do you want to be present at all

pretrial motions hearings in your case?

THE DEFENDANT: Yes.

THE COURT: Very good. Then I'm going to set the

case, Ms. Bare, for that control date of September 22nd,

2025, at 2:30 p.m. I understand that there may be other

persons who are charged but haven't yet come before the

Court, so it doesn't appear that we can set a trial date at

this time.

I'll make the same comment, Ms. Bare, that I made

in the other case, that the Court needs to be sensitive to

1    ensuring that the speedy trial issues, to the extent there

2    are any, are addressed with each defendant and that the

3    Court is advised whether or not this is a case that is

4    complex and whether it's going to be set outside of the date

5    normally specified by the Speedy Trial Act.  So I'll ask you

6    to be sensitive to that and make sure that those issues are

7    addressed going forward, whatever the next court date is

8    beyond the September 22nd date.

9            MS. BARE:  Yes, Your Honor.  I don't know if I --

10   if I heard it, but he does waive the formal reading of the

11   indictment.  The Court may have asked, and I just missed it.

12           THE COURT:  Is that correct, do you waive formal

13   reading of this indictment?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Very good.  Thank you.

16           Is there anything further?  There is no discovery

17   order in this case either yet?

18           MR. McKINNON:  No, Your Honor.  And nothing

19   further.  We will get that to you post-haste.

20           THE COURT:  Anything further, Ms. Bare?

21           MS. BARE:  May I have one moment, Your Honor?

22           THE COURT:  You may.

23           MS. BARE:  Your Honor, it's important to

24   Mr. Thornton to clarify that -- and this is how arrest

25   works.  Sometimes the arrests occur because a person is

1   released from custody or transferred custody.  It's not

2   necessarily the offense date.  He believes he was

3   incarcerated on some of these -- during some of these arrest

4   dates.  I have not had an opportunity to clarify that.  I

5   don't doubt his memory, but I have not had an opportunity to

6   check his criminal history (unintelligible).

7           THE COURT:  Sure.  And let's assume for the sake of

8   argument that's correct, that would not change what -- the

9   basis for my ruling and what it reflects.  Regardless is

10  that after repeated contacts with the criminal justice

11  system, Mr. Thornton has not yet decided to change course

12  and bring himself into compliance with the law, regardless

13  of the exact timing of those arrests and prior charges and

14  convictions.  So that's the basis for my ruling.

15          MS. BARE:  Yes, Your Honor.

16          THE COURT:  The defendant is remanded to the

17  custody of the U.S. Marshals.

18          If there is nothing further, Ms. Titus, the Court

19  will be in recess.

20          (Hearing adjourned at 3:12 p.m.)

21

22

23

24

25

<u>CERTIFICATION</u>

    I certify that the foregoing is a correct transcript, to the best of my ability, of the court's audio recording of proceedings in the above-entitled matter.


X_____/s/_____x

Jody A. Stewart

X_____9-12-2025 _____x

Date