FILED
IN OPEN COURT
JAN - 5 2026
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.

LOIS STATON

Defendant.

Case No. 2:25cr105

STATEMENT OF FACTS

The United States and the defendant, LOIS STATON (hereinafter, the defendant or STATON), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. STATON resided in the Eastern District of Virginia.

2. Navy Federal Credit Union (NFCU) is a financial institution as defined by Title 18, United States Code, Section 20. NFCU was a credit union with accounts insured by the National Credit Union Share Insurance Fund.

3. NFCU is one of the largest credit unions in the United States, offering membership to members of the Armed Forces and their families. A full suite of financial products is provided to members, including checking accounts, savings accounts, and personal loans. Members can access their financial accounts remotely by mobile application. The mobile application allows members to access current account balances, transfer funds from one account to another, transfer funds to outside financial institutions, and apply for consumer loans.

4. Cash App, a company of Block Inc., is a financial services platform that provides account holders access to peer-to-peer payments, direct deposit, and other services available through the Cash App mobile application. A Cash App account is linked to an account holder's

bank account to facilitate the transfer, withdrawal, and deposit of funds. When funds are transferred to a Cash App account from a financial institution, those transactions are sent via wire to a local server and then replicated to all other physical servers within the Cash App supporting infrastructure. Cash App servers include data centers located in: 1) San Jose, California, 2) Ashburn, Virginia, and 3) Tokyo, Japan.

5. NFCU offers its members a financial product referred to as a Personal Expense Consumer Loan (PEC). The PEC is a personal loan that a member may apply for via the NFCU mobile application and receive funds deposited directly into their chosen NFCU banking account within minutes of completing the application. The PEC loan server is located in San Antonio, Texas.

PROCEEDS FROM UNLAWFUL ACTIVITY

6. Since at least January 2023 through the present, in the Eastern District of Virginia, including the cities of Portsmouth, Chesapeake, Suffolk, Virginia Beach, and Norfolk, and elsewhere, fraud schemes have been prevalent that are perpetuated in parking lots near NFCU branches. The Conspirators, (not including STATON), would target victims in publicly accessible places, including parking lots, gas stations, shopping districts, and gyms, and convince victims, through deceit and intimidation, to give the Conspirators access to the victims' mobile devices. The Conspirators (not STATON) would then make unauthorized loan applications, financial disputes, transfers, and withdrawals from the victims' accounts via the NFCU mobile application.

7. Conspirators (not STATON) used forms of deceit and intimidation to obtain access to the victim's mobile devices and the financial institution and financial services mobile applications located on the device. This occurred primarily through a "parking lot scam" where the Conspirators (not STATON) would strategically approach a victim and convince the

victim to give the Conspirator access to their mobile device in a parking lot.

8. Conspirators (not STATON) made unauthorized transactions from the victim's accounts to the accounts of Conspirators (not STATON) and others known and unknown and obtained the personally identifiable information (PII) and financial information of the victim.

9. Once in possession of the victim's mobile device, the Conspirators (not STATON) would execute a variety of illicit acts to obtain funds from the victim, dependent on the situation, including but not limited to:

- The Conspirators (not STATON) submitted fraudulent PEC loan applications to NFCU via the victim's NFCU mobile application, directing the funds to be deposited into a victim's savings account, thereafter transferring the funds to the victim's checking account to conceal the funds originated from a loan disbursement;
- The Conspirators (not STATON) disputed large debits in the victims' banking accounts, and NFCU would temporarily credit the victim's account for the disputed funds, which increased the funds available in the victim's account for the Conspirator to unlawfully obtain;
- The Conspirators (not STATON) accessed and transferred a victim's PII to Conspirators. The Conspirators (not STATON) obtained the victim's log-in information for financial accounts and provided to Conspirators (not STATON);
- The Conspirators (not STATON) accessed and transferred the victim's banking information to other Conspirators (not STATON),

17. After a Conspirator (not STATON) executed illicit acts on a victim's mobile device, and the Conspirators (not STATON) then misled the victim by stating that the Conspirator had transferred too much money back to the victim, showing the increased funds available in the

victim's checking account. the Conspirators (not STATON) then requested the alleged "excess" funds from the victim and obtained the excess funds from the victims. Returns were made by:

a. Cash App, providing the Cash App account of a Conspirator (not STATON), or another victim, to the victim;

b. Zelle, providing the Zelle information of a Conspirator (not STATON), or another victim, to the victim; and / or

c. NFCU member-to-member transfer to an NFCU account of a Conspirator (not STATON), or another victim.

18. In situations where a victim's account had a limit on the amount of funds that could be transferred in a single day, such as Cash App, Conspirators (not STATON) would urge the victim to obtain a money order from a store, or cash from an ATM, while they followed the victims. As the Conspirators (not STATON) had obtained the PII of the victim, when a victim became aware that they were being defrauded, the Conspirators (not STATON) would contact the victim, up to days after the incident, stating words to the effect that the Conspirators (not STATON) knew where the victim lived and alleging that the victim had "their" (the Conspirators') money (STATON did not do this).

19. Conspirators (not STATON) concealed their illicit acts by covering their digital footprint on the victim's device, including deleting email notifications of the fraudulent loans, the Cash App transfers, and other financial transactions. In some instances, the Conspirators (not STATON) would delete the banking mobile applications and return the victims' mobile device to them in airplane mode, whereby a victim would not receive cellular signal and be notified of any recent transactions until they manually resumed connectivity of their mobile device.

20. In or about January 2023, and continuing to at least in or about April 2025,

CL EAW JS

in the Eastern District of Virginia and elsewhere, the activity described in the proceeding paragraphs along with other evidence, substantiates beyond a reasonable doubt that the following offenses were committed: wire fraud in violation of Title 18, United States Code, Section 1343, bank fraud in violation of 18 U.S.C, Section 1344, and conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349. As such, proceeds from the activity described above constitutes "proceeds of some form of unlawful activity" within the meaning set forth in 18 U.S.C. § 1956(c)(1).

CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

21. Conspirators concealed funds which were the proceeds of unlawful activity by having the initially obtained funds transferred to a co-Conspirator's financial account (STATON was involved in this part through knowing receipt), including NFCU, Venmo and Cash App. The funds would then be disbursed between multiple Conspirators and accessed in a variety of means, including transfers, cash withdrawals using ATMs, and by expenditures of multiple Conspirators' use of the same banking account (STATON was involved in this part). The Conspirators would use the accounts of victims to transfer funds, adding another layer of concealment (STATON was not involved in this part).

22. The evidence and investigation substantiate beyond a reasonable doubt that from in or about October 2023 to in or about May 2025, in the Eastern District of Virginia, STATON was deliberately ignorant to the fact that her Cash App and Apple Pay accounts were used to frequently transfer large sums of money derived from illegal activity conducted by the Conspirators, that she has no doubt she should have known the proceeds were from an illegal activity, and that STATON agrees the evidence substantiates beyond a reasonable doubt that the money moving through her accounts was derived from illegal activity, and that she knowingly and voluntarily became part of the money laundering conspiracy.

CL
RAW

23. To wit, on or around January 15, 2024, among other dates, Conspirators (not STATON), for the purpose of executing the scheme described below, caused to be transmitted the following fraudulent wire communications:

| **DATE (ON OR ABOUT)** | **WIRE SOURCE** | **DESCRIPTION** |
|---|---|---|
| May 1, 2024 | Navy Federal Credit Union Cash App/Block | In Chesapeake, Virginia, STATON, aided and abetted by others including but not limited to Troy Davis III and Laterrance Parker, transmitted $4,900 that had originated from victim AW through a fraudulent Personal Expense Consumer Loan application from Navy Federal Credit Union. |

STATON was deliberately ignorant as to the origin and basis for this transaction, which is to say she had the requisite knowledge of the specified unlawful activity and that the transferred proceeds were derived therefrom.

24. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

25. STATON knowingly, voluntarily, and intelligently submits the venue of the Court.

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Robert McBride
First Assistant United States Attorney

Todd Blanche
Deputy Attorney General

Date: 1/5/26

Clayton D. LaForge
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, LOIS STATON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

LOIS STATON

I am Roger Whitus, defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Roger Whitus, Esq.
Attorney for LOIS STATON